UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHELLE D. BARRETT,

                    Plaintiff,

v.

MICHAEL J. ASTRUE. Commissioner of
Social Security,

                  Defendant.

Case No. 3:11-cv-05664-RBL-KLS

REPORT AND RECOMMENDATION

Noted for May 25, 2012

       Plaintiff has brought this matter for judicial review of defendant's denial of her

applications for disability insurance and supplemental security income ("SSI") benefits. This

matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C.§

636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v.

Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the

undersigned submits the following Report and Recommendation for the Court's review,

recommending that for the reasons set forth below, defendant's decision to deny benefits should

be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

       On September 25, 2008, plaintiff filed an application for disability insurance and another

one for SSI benefits, alleging disability as of September 18, 2008, due to a bipolar disorder,

depression, social phobia, a personality disorder, a panic disorder, an obsessive/compulsive

disorder, a post traumatic stress disorder ("PTSD"), and hypothyroidism. See Administrative

REPORT AND RECOMMENDATION - 1

Record ("AR") 17, 120, 123, 162. Both applications were denied upon initial administrative review and on reconsideration. See AR 17, 76, 79, 85, 87. A hearing was held before an administrative law judge ("ALJ") on November 2, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 33-66.

On January 6, 2011, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 17-27. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 28, 2011, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R.§404.981,§416.1481. On August 24, 2011, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #1-#3. The administrative record was filed with the Court on November 15, 2011. See ECF #10. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for an award of benefits, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; (3) in rejecting the lay witness evidence in the record; (4) in assessing plaintiff's residual functional capacity; and (5) in finding her to be capable of performing other jobs existing in significant numbers in the national economy. The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ's Evaluation of the Medical Evidence in the Record

        The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

        In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881

F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." <u>Id.</u>; <u>see</u> <u>also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3rd Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. <u>See</u> <u>Lester</u>, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." <u>Batson v. Commissioner of Social Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>see</u> <u>also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

A.   <u>Dr. Tapper</u>

Plaintiff challenges the ALJ's following findings:

Bruce J. Tapper, Ph.D., completed a [state agency] psychological/psychiatric evaluation form. (Exhibit 28F). It was Dr. Tapper's opinion the claimant had

marked and severe limitations in her ability to perform basic work activities, and she was unable to work due to her symptoms. . . . The undersigned gives less weight to [this opinion] because [it was] heavily based on the claimant's self-reports, inconsistent with the claimant's reported activities of daily living, the alleged severe limitations are unsupported by treatment records and mental status examinations, and the opinions are inconsistent with the overall evidence of record. The undersigned also notes that [Dr. Tapper's evaluation was] conducted for the purpose of determining the claimant's eligibility for state assistance; the claimant was likely aware that the continuation of state assistance was dependent upon [Dr. Tapper's evaluation], and therefore there was incentive to overstate symptoms and complaints.

AR 25. The Court, however, finds no error on the ALJ's part here.

A physician's opinion premised on a claimant's subjective complaints may be discounted where the record supports the ALJ in discounting the claimant's credibility. See Tonapetyan, 242 F.3d at 1149; see also Morgan, 169 F.3d at 601 (9th Cir. 1999) (opinion of physician premised to large extent on claimant's own accounts of her symptoms and limitations may be disregarded where those complaints have been properly discounted). While, as noted by plaintiff, Dr. Tapper's evaluation does contain a mental status examination as well as his own reported observations of plaintiff during the evaluation he conducted (see AR 705),[1] it is clear that Dr. Tapper's actual mental functional assessment largely is based on plaintiff's own self-reporting (see AR 698-705).

Plaintiff is correct that in Ryan v. Commissioner of Social Security, 528 F.3d 1194 (9th Cir. 2008), the Ninth Circuit stated that "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the [claimant's] complaints where the [examining physician] does not discredit those complaints and supports his

---

[1] See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987 (opinion based on clinical observations supporting diagnosis of depression is competent objective medical evidence); Sanchez v. Apfel, 85 F. Supp.2d 986, 992 (C.D. Cal. 2000) ("[W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnoses and observations of professionals trained in the field of psychopathology.") (quoting Christensen v. Bowen, 633 F.Supp. 1214, 1220-21 (N.D.Cal.1986)).

[or her] ultimate opinion with his [or her] own observations." Id. at 1199-1200. While it is true that there is no indication Dr. Tapper did not find plaintiff credible, in Ryan – unlike in this case – there was "nothing in the record to suggest" the examining physician relied on the claimant's own "description of her symptoms . . . more heavily than his own clinical observations." Id. at 1200. Instead, as discussed above, Dr. Tapper's evaluation report shows he appeared to rely for the most part on plaintiff's own reporting.

The ALJ also did not err in discounting that evaluation report on the basis that it was not consistent with plaintiff's reported activities of daily living. See Morgan, 169 F.3d at 601-02 (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis that claimant's reported activities of daily living contradicted that conclusion); Magallanes v. Bowen, 881 F.2d 747, 754 (9th Cir. 1989) (finding ALJ properly rejected opinion of physician in part on basis that it conflicted with plaintiff's pain complaints). Plaintiff argues the ALJ's findings regarding her activities of daily living are inadequate and incomplete, but as discussed in greater detail below, the undersigned finds such is not the case.

The undersigned does agree that the ALJ erred in rejecting Dr. Tapper's evaluation report on the basis that it was inconsistent with the overall evidence of record, given that no explanation of the purported inconsistency was offered by the ALJ. See Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988) (insufficient for ALJ to reject physician's opinion by merely stating without more that there are no objective medical findings to support it). In addition, it was improper for the ALJ to reject Dr. Tapper's evaluation on the basis that it was conducted for the purpose of determining plaintiff's eligibility for state assistance. This is because, absent "evidence of actual improprieties," the purpose for which an evaluation report is obtained does not constitute a legitimate reason for rejecting it. Lester, 81 F.3d at 832 ("An examining doctor's findings are

REPORT AND RECOMMENDATION - 6

entitled to no less weight when the examination is procured by the claimant than when it is obtained by the Commissioner.").

There is no evidence any such actual improprieties in this case. Nor did the ALJ point to anything in the record to support his assertion that plaintiff likely was aware the evaluation Dr. Tapper conducted was for the purpose of obtaining state assistance, or that if she was, this caused her to overstate her symptoms and complaints. Nevertheless, as discussed above, the ALJ did provide at least two valid reasons for rejecting Dr. Tapper's evaluation report. Accordingly, the ALJ did not err overall in doing so.

B.     Ms. Scott

The ALJ also addressed two evaluation reports provided by Linda Scott, one of plaintiff's mental health therapists:

> . . . In August of 2009, . . . [Ms.] Scott . . . completed a [state agency] psychological/psychiatric evaluation form. (Exhibit 26F). Ms. Scott reported the claimant's symptoms had marked and severe limitations in the ability to perform work activities. In October of 2008, Ms. Scott again completed a [state agency] psychological/psychiatric evaluation form. (Exhibit 12F). It was Ms. Scott's opinion that the claimant had moderate cognitive limitations and generally marked limitations in social functioning. This evaluation was later redated July 29, 2009, and resubmitted. (Exhibit 26F/14). . . .

AR 25. The ALJ gave the same reasons for rejecting Ms. Scott's evaluation reports that he did in regard to Dr. Tapper's evaluation report. See id. Once again, the undersigned finds no error on the ALJ's part overall in rejecting Ms. Scott's evaluation reports here.

As with Dr. Tapper, although Ms. Scott conducted mental status examinations and also noted her own observations, she too clearly relied to a large extent on plaintiff's self-reporting in formulating her conclusions.[2] See AR 366-73, 677-91. In addition, again as with Dr. Tapper, the

---

[2] In addition, at least one of the reasons for finding plaintiff to be markedly limited in her ability to function socially – that she had "difficulty adapting and talking in group therapy" (AR 681) – is y inconsistent with the weight of the

ALJ did not err in finding plaintiff's reported activities of daily living were inconsistent with the disabling functional limitations assessed by Ms. Scott. Thus, while once more as with respect to Dr. Tapper's evaluation report, the ALJ erred in rejecting those of Ms. Scott for the reasons that they were inconsistent with the overall evidence of record and were conducted for the purpose of obtaining state assistance,[3] the first two reasons he gave were valid.

C.     Dr. Lloyd

Plaintiff further finds fault with the ALJ's treatment of the following medical evidence in the record:

> The claimant attended a psychological consultative examination in January of 2009 with John T. Lloyd, Ph.D. (Exhibit 13F). Dr. Lloyd interviewed the claimant, tested the claimant, and performed a mental status examination. It was Dr. Lloyd's opinion that the claimant could do simple, repetitive tasks without difficulty as long as it was an environment without social contact. Dr. Lloyd assessed the claimant with a [global assessment of functioning ("]GAF["] score] of 60 indicated [sic] moderate symptoms that interfered with social and occupational functioning.[4] The undersigned gives significant weight to this opinion because it was based on an in-person examination, the

---

evidence in the record that shows for the most part she participated "adequately" or "fully" during group sessions (See AR 495, 501, 503, 505, 509-10, 515, 517, 537, 539-40, 542-43, 548, 551-53).

[3] As noted above, the ALJ also discounted Ms. Scott's evaluation reports – and that of Dr. Tapper – on the basis that they were unsupported by treatment records. Given that Dr. Tapper appears to be an examining psychologist, this is not surprising as he did not treat plaintiff, and thus this was not a valid basis for rejecting his evaluation report. But, as discussed above, the ALJ provided two other proper reasons for rejecting it. As for Ms. Scott, plaintiff points out that treatment records from her cover a period of many years. Those records, though, largely are devoid of clinical findings indicative of severe – let alone disabling – mental functional limitations, and indeed as found by the ALJ as discussed in greater detail below, show plaintiff's condition improved over time. See AR 446-494, 496, 498, 500, 502, 504, 506-07, 511, 513, 516, 518-20, 524-25, 527, 530, 532-33, 536, 538, 541, 544-45, 549-50, 556-70, 658, 693-94; Batson, 359 F.3d at 1195 (ALJ need not accept opinion of even treating physician if inadequately supported by clinical findings). However, given that the ALJ did not specifically address those records, but merely referred to "treatment records" in general with regard to her and Dr. Tapper, the undersigned declines to find it was a legitimate basis for rejecting Ms. Scott's evaluation reports. See Embrey, 849 F.2d at 421.

[4] A GAF score is "a subjective judgment based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007). It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). As noted by the ALJ, "[a] GAF of 51-60 indicates '[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).'" Tagger v. Astrue, 536 F.Supp.2d 1170, 1173 n.6 (C.D.Cal. 2008) (quoting American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34).

REPORT AND RECOMMENDATION - 8

opinion was supported by and consistent with the clinical observations and findings, the opinion was consistent with the claimant's reported activities of daily living, and the opinion is consistent with the overall objective medical evidence of record that shows although the claimant has mental impairments, the claimant is not as limited in the ability to function as alleged.

AR 24. Specifically, plaintiff argues that while the ALJ gave significant weight to Dr. Lloyd's opinion, he failed to account for all of the mental functional limitations Dr. Lloyd found in his own assessment of plaintiff's residual functional capacity. The undersigned agrees.

In his evaluation report, Dr. Lloyd provided the following medical source statement with respect to plaintiff's functional capabilities:

> . . . Given this examination, [plaintiff] could probably do simple, repetitive tasks without difficulty, as long as they were not in an environment with any social contact. Complex tasks or tasks requiring memory may be a problem. She continues to become confused easily and reports a memory problem which is noted in the testing. This would limit her ability to do tasks with complexity. Tasks requiring social skills are beyond her at this time. Social contact, in fact, will cause further panic attacks and her overall behavior would probably degrade.

AR 380. As such, Dr. Lloyd expressly opined that plaintiff could only perform simple, repetitive tasks in an environment *without* social contact, that tasks requiring social skills were "beyond her at this time" and that social contact probably would cause degradation in her overall behavior. Id. The ALJ, on the other hand, found in relevant part that:

> **. . . the claimant can respond appropriately to a familiar supervisor; the claimant is not required to work in coordination with co-workers; the claimant cannot deal with the general public as in a sales position or where the general public is frequently encountered as an essential element of the work process; and the claimant's incidental contact with the general public is not precluded.**

AR 22 (emphasis in original). Thus, although the ALJ did limit to a great degree the nature and extent of social contact plaintiff could have in a workplace setting, he did not preclude her from

all such contact as opined by Dr. Lloyd. Nor did the ALJ explain why he did not find as did Dr.

Lloyd regarding social contact, despite giving his opinion significant weight.[5]

   D.   <u>Drs. Brown and Harrison</u>

   Plaintiff challenges as well the ALJ's reliance on the following medical sources:

   State agency medical consultant Michael L. Brown, Ph.D., completed a
   psychiatric review technique form on February 16, 2009. (Exhibit 17F). Dr.
   Brown reviewed the claimant's medical records and it was his opinion that the
   claimant had mild limitation in activities of daily living, moderate limitation
   in maintaining social functioning, moderate limitation in maintaining
   concentration, persistence or pace, and no episodes of decompensation. That
   same day, Dr. Brown completed a mental residual functional capacity
   assessment of the claimant. (Exhibit 16F). Dr. Brown found the claimant had
   the following mental functional capacity: to understand, remember and carry
   out simple instructions; to work with supervision away from demanding
   contacts with the public or coworkers; and to adapt to changes in a work
   setting doing noncomplex tasks and involving minimal interpersonal contacts.
   In May of 2009, state agency medical consultant Kristine Harrison, Psy.D.,
   reviewed the claimant's medical records and affirmed Dr. Brown's
   assessment. (Exhibit 24F). The undersigned gives significant weight to these
   opinions because they were based on a review of the claimant's medical
   records, the assessment as to the claimant's abilities was supported with
   references to the objective medical evidence of record, and the opinions are
   consistent with the overall evidence of record including the claimant's ability
   to engage in a wide range of activities.

AR 24. Plaintiff argues the ALJ's reliance was misplaced because despite finding her to be able

to understand, remember and carry out simple instructions, Dr. Brown noted that on testing she

had some delay in recalling objects on testing, performed another task slowly and lost her place

on more than one occasion, and described her attention skills as being "significantly impaired."

AR 416. But such observations are not inconsistent with the above assessed limitation, which is

---

[5] On the other hand, the undersigned disagrees with plaintiff that the ALJ erred with respect to Dr. Lloyd's opinion
that she "could probably do simple, repetitive tasks without difficulty," but that she continued "to become confused
easily." AR 380. This is because Dr. Lloyd clearly opined that plaintiff's confusion "would limit her ability to do
tasks with complexity," and not that it would interfere with her ability to perform simple, repetitive tasks. <u>Id.</u> Since
the ALJ restricted plaintiff to being able to perform simple tasks (<u>see</u> AR 22), there is no inconsistency on this issue
between the ALJ's findings and the opinion of Dr. Lloyd.

a significant restriction in its own right.  Nor is the fact that plaintiff reported having difficulty in deciding what items to buy when shopping and in curtailing her shopping, and that she exhibited intermittent eye contact and had quiet and hesitant speech inconsistent with Dr. Brown's opinion that she could work with supervision away from demanding contacts with her co-workers or the public. <u>See</u> <u>id.</u>  Thus, the undersigned finds no error here.[6]

      E.    <u>Ms. Folden</u>

The record contains a state agency psychological/psychiatric evaluation form completed by Sara Folden, one of plaintiff's mental health counselors, on July 12, 2011, in which plaintiff was assessed with a number of marked to severe mental functional limitations. <u>See</u> AR 762-70. This form, though, was submitted to the Appeals Council after the ALJ already had issued his decision. <u>See</u> AR 1-4, 762-70.  Thus, the ALJ cannot be faulted for failing to consider it.  The Court nevertheless may consider new evidence submitted to the Appeals Council in determining whether the ALJ's decision is supported by substantial evidence. <u>See</u> <u>Ramirez v. Shalala</u>, 8 F.3d 1449, 1451-52 (9th Cir. 1993); <u>Harman v. Apfel</u>, 211 F.3d 1172, 1180 (9th Cir. 2000) (additional evidence properly may be considered, since Appeals Council addressed it in context of denying request for review); <u>Gomez v. Chater</u>, 74 F.3d 967, 971 (9th Cir. 1996) (evidence submitted to Appeals Council is part of record on review to federal court).

Ms. Folden's functional assessment, however, appears to be largely based on plaintiff's self-reporting. <u>See</u> AR 762-66.  Indeed, while a mental status examination was performed by Ms. Folden as well, that examination was fairly unremarkable. <u>See</u> AR 767-700.  Nor do the progress notes accompanying the evaluation form Ms. Folden completed provide much, if any, support for

---

[6] Plaintiff further argues that the ALJ erred in relying on the opinions of Dr. Brown and Dr. Harrison, because they did not consider the opinions of Dr. Tapper and Ms. Scott.  But because, as discussed above, the ALJ did not err in rejecting the opinions of Dr. Tapper and Ms. Scott, the existence of those opinions does not provide a proper basis on which to discount the opinions of Drs. Brown and Harrison or the ALJ's reliance thereon.

REPORT AND RECOMMENDATION - 11

the marked to severe limitations she assessed. See AR 750-53. Further, because the ALJ rejected the opinions of Dr. Tapper and Ms. Scott in part on the basis that those opinions too were largely premised on plaintiff's own reports – and properly so as discussed above – the ALJ likely would have rejected Ms. Folden's assessment for this reason as well. As such, the undersigned finds this additional evidence is insufficient to overturn the ALJ's decision.

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273,

REPORT AND RECOMMENDATION - 12

1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

In this case, the ALJ discounted plaintiff's credibility in part on the following basis:

> There is evidence of record that the claimant may not be as limited in the ability to function as alleged. In August of 2010, the claimant reported she was keeping busy by putting the chickens out, feeding the fish, doing things in the yard, working on a couple [sic] small jobs for a friend involving crafts, and enrolling in a glass fusing class. (Exhibit 30F/3-4). The claimant reported in May of 2010 that she was "on the road" with her boyfriend who did long haul trucking. (Exhibt 30F/6). In January of 2009, the claimant reported she took an eighteen day trip with a friend, was exercising a good deal, enjoying craft projects, and participating in an anxiety management group. (Exhibit 20F/5). She testified she enjoys doing crafts for friends and even does an annual Christmas card for a local clothing store called "The Toggery[.]" She gets paid $50.00 for this art/craft work.

AR 23. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). First, such activities can "meet the threshold for transferable work skills." Id. Under this ground, a claimant's testimony may be rejected if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Smolen, 80 F.3d at 1284 n.7.

The claimant, however, need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id. In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick , 157 F.3d at 722. Under the second ground in Orn, a claimant's activities of daily living can "contradict his [or her] other testimony." 495 F.3d at 639.

REPORT AND RECOMMENDATION - 13

Plaintiff argues the activities summarized above are not a valid basis for finding she lacks credibility, asserting first that the ALJ mischaracterized the activities she reported in August of 2010. On August 12, 2010, Ms. Folden wrote that plaintiff reported she had been "trying to keep busy," and that plaintiff had been "spending 15 minutes a day outside this week putting the chickens out, feeding the fish and doing things in the yard," which "felt good to her," that she had been "working on a couple of small jobs for a friend involving crafting, which g[ave] her a sense of purpose," and that she had "enrolled in a glass fusing class." AR 751-52. But plaintiff counters the ALJ failed to consider that two weeks later, she reported having panic attacks of "up to three times per day, since her grandma came to visit," and that Ms. Folden noted that "[a]fter a couple weeks of encouraging progress toward treatment goals," she "seem[ed] to have suffered a setback." AR 752.

But the panic attacks appear to have been primarily situational, centering around the visit by her grandmother, with plaintiff herself identifying part of the problem being "tension between family members and stress related to her grandma buying a house and all that was involved." Id. In addition, the activities plaintiff reported in August 2010, do indicate a level of engagement in daily life at odds with her claims of total disability, even though she may not have performed them for a substantial part of each day.[7] Those activities, furthermore, must be seen in context with the other activities plaintiff has reported during the relevant time period. For example, in early July 2008, just two months prior to her alleged onset date of disability, she was noted to be

_____

[7] In regard to the glass fusing class, plaintiff points to her testimony at the hearing that it was a "three-hour class one day," and that her friend and mother talked her into it. AR 43. But the fact that she was able to participate in a three-hour class, even for one day, is indicative of an ability to engage in physical and mental activities at a level greater than has been alleged here. In addition, plaintiff testified that her friend and mother talked her into participating in that class "because they knew [she] liked stained glass." Id. There is no indication in that testimony that she had to be "convinced" into attending the class despite her alleged impairments as plaintiff now implies. ECF #11, p. 12. As for the crafting, plaintiff again notes she testified that she "made a couple of Christmas presents" for mother and her father's best friend. AR 43. But as discussed below, the record contains other reports from plaintiff showing she has engaged in crafting at a more involved level than this.

"[m]aking some progress in [her] personal life in that she spontaneously stopped at a café to 'yak' with acquaintences after work." AR 461.

In early August 2008, plaintiff told Ms. Scott that she had "engaged with a co-worker to make craft products for sale and ha[d] begun a relationship with a prospective partner" (AR 459), and reported to another mental health provider that she had "purchased a bicycle and ha[d] been setting and achieving progressive goals for herself in terms of time, distance and hills" (AR 399). In late August 2008, plaintiff told Ms. Scott that she would "begin production and marketing of crafts" (AR 458). Indeed, plaintiff was noted to be still working part-time in early October 2008, some two weeks after her alleged onset date of disability. AR 395.

In mid-January 2009, plaintiff reported that she did laundry, read and e-mailed, and that she crocheted and did some crafts. See AR 377. In late January 2009, she reported that she had been "dating a man who is a long haul truck driver and accompanied him on an 18 day trip in which they travelled through 13 states," adding that she "had a great time." AR 391. In early February 2009, it was noted that plaintiff continued "to participate in her usual activities," albeit "with more distraction and less satisfaction" (AR 447), and later that month it was further noted that she was "maintaining adequately" (AR 446). In early July 2009, plaintiff reported that she tended "her partner's horses." AR 693. In late September 2009, Ms. Scott wrote the following:

> . . . [Plaintiff] just completed a month-long trip with her trucker/partner. They got along very well and are committed to a future together. [Plaintiff] notes that she enjoyed and felt at-ease with the CB community, met several of his friends and was able to negotiate the truck stops more independently. . . .

AR 694; see also AR 695 ("She went on a month long trucking trip with her sig[nificant] other, which she enjoyed.").

Plaintiff attempts to downplay the significance of the trucking trips she took by pointing to her report to Dr. Tapper that "the only time she leaves home is to ride along with [her trucker

REPORT AND RECOMMENDATION - 15

boyfriend] on his long distance runs." AR 698. But, as discussed above, the record reveals that she gets outside to engage in activities more often than that, and not just to attend appointments. In addition, also as discussed above, plaintiff's other self-reports indicate she was engaged in and enjoyed those long-distance trips. The fact that plaintiff also remained in contact with her long-time therapist while on the road, furthermore, merely indicates a desire of hers to continue with mental health treatment, and not the presence of disabling limitations, even though she may have reported an "increase in anxiety and agoraphobic symptoms which were causing her problems," which plaintiff did not define at the time. AR 754.

Plaintiff further notes that during the 18-day trucking trip she took in late January 2009, she reported having three anxiety attacks requiring medication. But this is taken out of context. What plaintiff actually reported as indicated above was that she "had a great time" on that trip, and that she "*only* had 3 anxiety attacks" requiring medication. AR 391 (emphasis added). This thus indicates improvement in plaintiff's condition rather than deterioration. Plaintiff also points to the significant mental functional limitations Ms. Scott assessed six months after she took this trip, but as discussed above the ALJ did not err in rejecting those limitations, and therefore they do not provide a proper basis for discounting the ALJ's credibility determination here.

Finally, plaintiff argues the ALJ failed to explain how her participation in an anxiety management group detracts from her credibility. The undersigned agrees the mere fact that plaintiff participated in such a group alone is not a clear and convincing reason for discounting her credibility. Nevertheless, as discussed above, the other activities plaintiff has reported that she engaged in do support the ALJ's finding that she was not entirely credible in light of such activities. See Bray v. Commissioner of Social Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (while ALJ relied on improper reason for discounting claimant's credibility, he presented other

valid, independent bases for doing so, each with "ample support in the record"); Tonapetyan, 242 F.3d at 1148. In addition, although the record may not show as plaintiff argues, that she spent a substantial part of her day performing household chores or other activities that are transferable to a work setting, they do "contradict [her] other testimony" that she suffers from disabling mental and physical symptoms and limitations. Orn, 495 F.3d at 639.

The ALJ, furthermore, provided other valid reasons for discounting plaintiff's credibility. For example, the ALJ found in relevant part as follows:

> There is no objective medical evidence to support the alleged severity and limiting effects of the claimant's physical impairments. The claimant's medical records document she sought care to treat her hypothyroidism, and complained of symptoms such as feeling very tired, hair falling out, and headaches. (Exhibit 21F). The claimant was prescribed medication to manage the symptoms from her hypothyroidism, and advised to follow up in a few months. (Exhibit 29F/21). In August of 2010, the claimant reported she felt better on a higher thyroid does and was not as tired and sluggish. (Exhibit 29F/2). The claimant complained of low back pain, and images of the claimant's lumbar spine showed mild degenerative disc disease. (Exhibit 9F/6). Upon examination, the claimant had good upper and lower extremity strength, normal sensation, and normal deep tendon reflexes. (Exhibit 9F/4). The claimant reported in November of 2008 that her back was better. (Exhibit 21F/26).

AR 23. A determination by the ALJ that a claimant's complaints are "inconsistent with clinical observations" can satisfy the clear and convincing requirement. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998). Thus, while it may have been improper for the ALJ to have discounted plaintiff's credibility based on a lack of objective medical evidence to support plaintiff's alleged mental impairments – in light of the ALJ's error, discussed above, in failing to fully take into account the social functional limitations assessed by Dr. Lloyd – the ALJ properly found plaintiff to be not fully credible in regard to her physical complaints, and in particular with respect to her hypothyroidism, which she also claimed to be disabling.

Although the ALJ did err in finding no objective medical evidence to support the alleged

REPORT AND RECOMMENDATION - 17

severity and limiting effects of plaintiff's mental impairments, he properly discounted plaintiff's credibility in part based on medical evidence in the record that her mental health symptoms had improved. See AR 23-24; Morgan, 169 F.3d at 599 (ALJ may discount claimant's credibility based on medical improvement); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). While plaintiff questions this basis for discounting her credibility, the substantial evidence in the record shows she did experience some fairly significant improvement over time. See AR 380, 391, 399, 401, 403, 405, 407, 448, 450, 593, 660-61, 694-95, 751-52, 754, 756-60. Plaintiff argues she was not "released" from therapy as noted by the ALJ, but rather she left because her long-term treating therapist had retired. AR 24. But the progress note plaintiff cites actually states that she reported "she left the agency after many years last fall as she was doing better *and* the therapist she felt very connected to retired." AR 754 (emphasis added). Accordingly, here too the ALJ did not err in discounting plaintiff's credibility on this basis.

III.     The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001). In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512. The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains a lay witness statement from plaintiff's mother, which sets forth her observations of plaintiff's symptoms and limitations. See AR 139-46. In rejecting this statement,

the ALJ stated he had considered it and found it supported "the overall record that [plaintiff] ha[d] some mental limitations, but it fail[ed] to support any limitations on functional capacity greater than" those found by the ALJ. AR 25.  But plaintiff's mother stated that "[s]ome days" plaintiff "doesn't do anything," that she "just can't stay awake" at times and takes naps during the day, that she "has trouble finishing anything," that she "doesn't go anywhere on a regular basis" except for medical and mental health appointments, and that she needs to read instructions "several times" before being able to follow them. AR 139, 143-44.  None of the limitations the ALJ assessed plaintiff with, however, adequately accounts for these observed limitations.  Nor did the ALJ provide any germane reasons for rejecting them.  As such, the undersigned agrees with plaintiff that the ALJ erred in rejecting her mother's statement here.

IV.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

        Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R.§404.1520; 20 C.F.R.§416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends.  See id.  If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four of that process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

        Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.  it is the maximum amount of work the claimant is able to perform based on all

of the relevant evidence in the record. See id. However, an inability to work must result from the

claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those

limitations and restrictions "attributable to medically determinable impairments." Id. In

assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-

related functional limitations and restrictions can or cannot reasonably be accepted as consistent

with the medical or other evidence." Id. at *7.

      The ALJ in this case found in relevant part that plaintiff had the residual functional

capacity:

> **. . . to perform light work . . . Specifically, [she] has the physical residual
> functional capacity as follows: [she] can occasionally lift and/or carry
> twenty pounds maximum, and frequently lift and/or carry ten pounds;
> [she] can stand and/or walk with normal breaks for up to six hours in an
> eight hour workday; [she] can sit with normal breaks for up to six hours
> in an eight hour workday; [she] can push and/or pull including operation
> of hand and/or foot controls unlimited [sic] subject to the lift/carry
> restrictions; [she] can perform frequent climbing and balancing,
> occasional stooping, and frequent kneeling, crouching and crawling; [she]
> has no manipulative, visual and communication limitations; and [she]
> must avoid concentrated exposure to vibrations. [She] has the mental
> capability to adequately perform the mental activities generally required
> by competitive, remunerative work as follows: [she] can understand,
> remember and carry out simple one to two step instructions, required of
> jobs classified at a[n] . . . unskilled level of work; [she] would have
> average ability to perform sustained work activities (i.e., can maintain
> attention and concentration; persistence and pace) in an ordinary work
> setting on a regular and continuing basis (i.e., eight hours a day, for five
> days a week, or an equivalent work schedule) within customary
> tolerances of employers rules regarding sick leave and absence; [she] can
> make judgments on simple work-related decisions; [she] can respond
> appropriately to a familiar supervisor; [she] is not required to work in
> coordination with co-workers; [she] can deal with changes all within a
> stable work environment; [she] cannot deal with the general public as in a
> sales position or where the general public is frequently encountered as an
> essential element of the work process; and [her] incidental contact with
> the general public is not precluded.

AR 21-22 (emphasis in original). Plaintiff argues, and the undersigned agrees, that the above

RFC assessment cannot be said to be supported by substantial evidence, given the ALJ's failure to properly address Dr. Lloyd's opinion and plaintiff's mother's lay witness statement. As such, here too the ALJ erred.

V.    The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R.§404.1520(d), (e),§416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 58-60. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age and as plaintiff – would be able

to perform other jobs. See AR 58-61. Based on the testimony of the vocational expert, the ALJ

found plaintiff would be capable of performing other jobs existing in significant numbers in the

national economy. <u>See</u> AR 26-27.

Again, the undersigned agrees with plaintiff that in light of the ALJ's errors in addressing

the opinion of Dr. Lloyd and the lay witness statement of plaintiff's mother, and thus in assessing

plaintiff's residual functional capacity, it is not at all clear that the hypothetical question posed

by the ALJ to the vocational expert – and thus the vocational expert's testimony – is completely

accurate. Accordingly, for the same reasons, the ALJ's step five determination cannot be upheld.

On the other hand, the undersigned rejects plaintiff's assertion that she should be found disabled

based on her sporadically missing work as much as four to eight hours of a forty-hour workweek,

as the record at this time fails to support such a limitation. Nor does the record at this time also

support a finding that plaintiff would blank out and be nonfunctional at work or would leave the

job or walk off the worksite after an interaction with a supervisor. Lastly, the fact that problems

with occasional work changes may be "vocationally relevant" (AR 64), again does not mean that

the record here necessarily establishes the existence of such problems or that they would actually

preclude the jobs identified by the vocational expert.

VI.     <u>This Matter Should Be Remanded for Further Administrative Proceedings</u>

The Court may remand this case "either for additional evidence and findings or to award

benefits." <u>Smolen</u>, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the

proper course, except in rare circumstances, is to remand to the agency for additional

investigation or explanation." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004) (citations

omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is

unable to perform gainful employment in the national economy," that "remand for an immediate

REPORT AND RECOMMENDATION - 22

award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain with respect to Dr. Lloyd's opinion, the lay witness statement in the record, plaintiff's residual functional capacity, and her ability to perform other jobs existing in significant numbers in the national economy, remand for further administrative proceedings is appropriate in this matter.

CONCLUSION

Based on the foregoing discussion, the undersigned recommends that the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse defendant's decision and remand this matter for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk

REPORT AND RECOMMENDATION - 23

is directed set this matter for consideration on **May 25, 2012**, as noted in the caption.

DATED this 9th day of May, 2012.

Karen L. Strombom
United States Magistrate Judge